SAVORY, INC., v. CLAXTON.

1. PARTNERSHIP—SALES—CONTRACT AS TO LIABILITY OF PARTNERS.
   In absence of agreement as to liability of partners to seller for goods sold by latter to partnership, the partners are liable for the debts of the firm.

2. SAME—CONSTRUCTION OF CONTRACT OF GUARANTY.
   Contract of guaranty of payment for goods sent partnership when orders were countersigned by members signing guaranty is construed strongly against seller by whose agent it was drawn.

3. SAME—EVIDENCE OF INTENTION.
   In order to interpret agreement of partners to guarantee payment for goods sold partnership by seller provided order was countersigned by one of the partners, intention of the parties thereto is gathered from the undisputed testimony.

4. SAME—COUNTERSIGNATURE OF PARTNERS—CONTRACT LIMITING LIA-
BILITY.

In action for balance due on account for goods sent partnership,
partners *held,* not individually liable therefor where goods
had been sent on orders which had not been countersigned
in accordance with seller's agreement to accept only such
orders notwithstanding a long time elapsed after signing the
agreement during which a large amount of goods had been
shipped on unsigned orders and not returned and payments on
account were made by checks signed by one of the partners
where there is no evidence of waiver of the terms of the
agreement or that partners knew of such shipments being
made on unsigned orders.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted June 13, 1935. (Docket No. 8, Calendar
No. 38,032.) Decided September 9, 1935. Rehearing
denied October 30, 1935.

Assumpsit by Savory, Incorporated, a New York
corporation, against E. L. Claxton and M. L. Briggs,
doing business as Claxton-Briggs Company, a co-
partnership, for sums due on an open account for
goods purchased. Judgment for defendants. Plain-
tiff appeals. Affirmed.

*Longley, Bogle & Middleton* and *Wallace Visscher,*
for plaintiff.

*William F. Connolly, Jr.,* and *Sempliner, Dewey,
Stanton & Honigman* (*William M. Sempliner,* of
counsel), for defendants.

BUTZEL, J. Savory, Incorporated, a New York cor-
poration, sold electric fans, roasters, toasters, etc.,
manufactured by two other corporations. E. L. Clax-
ton of Detroit was in the varnish business and
M. L. Briggs was assistant general manager of a
manufacturing company. In order to assist a third

party in financial difficulties, Briggs and Claxton formed a copartnership known as the Claxton-Briggs Company, for the purpose of continuing the business of selling electrical goods. Neither paid any attention to the business. They regarded it as a side issue and left the management to a third party. In May, 1928, they found that they had been overstocked with a year's supply of plaintiff's goods through mismanagement of the party in charge of the business and the overzealous efforts of plaintiff's salesmen. They thereupon concluded to discontinue the business, and so informed plaintiff's representative, a Mr. Kent. He requested they continue in business. After a conference they finally made an adjustment in accordance with which the major portion of the goods on hand were returned to plaintiff, a check given for the balance and an oral agreement entered into by them and plaintiff through its representative, in which it was distinctly agreed that no more orders be given that would be binding upon defendants unless countersigned by either one of the partners. Thereupon the following letter was drawn by plaintiff's representative, signed by both Briggs and Claxton and the original was received by plaintiff:

"Detroit, Michigan, May 4, 1928.
"Savory, Incorporated,
"Buffalo, New York.
"Gentlemen:
"Messrs. E. L. Claxton, 1688 Edison avenue, Detroit, Michigan, and M. L. Briggs, 1701 Balmoral drive, Detroit, Michigan, doing business under the trade name of Claxton-Briggs Company, do hereby guarantee the payment of any obligations contracted for by the above company with the stipulation that each order accepted by you must be countersigned by at least one of the signatures below.
"M. L. Briggs.        E. L. Claxton."

Contemporaneously with the entering into of the agreement, a large order for approximately $10,000 of goods was given and countersigned by one of the defendants, but the major portion of the order was canceled by plaintiff and only a small amount of goods shipped. The principal part of the order was for a roaster that defendants had not previously handled. Only two other countersigned orders were given plaintiff, one being dated the following month and the other almost a year later. Defendants left the business in charge of a Mr. Gunderson and paid but little further attention to it. During a period of over 22 months following the date of the agreement, 27 other shipments were made to defendants without orders countersigned by either of them. There is some dispute as to how these goods were ordered: whether one large shipment was sent on consignment and whether a machine of the value of $111 was included with others that were returned to plaintiff. The trial judge believed defendants' testimony and gave credit for the return of this machine. We need not consider whether a large order was sent on consignment or not. It is conceded that all the shipments made, with the exception of the three heretofore mentioned, were upon orders not countersigned by either of the defendants. A number of payments were made on account, the checks being signed by one of the defendants, and credited on plaintiff's books to defendants' account without being applied to any particular invoices.

There is no question but that the partners would have been liable for the debts of the copartnership had no agreement been entered into. The agreement must be strongly construed against plaintiff, by whom it was drawn. The agreement as construed by plaintiff would neither increase nor diminish the liability of the partners. In order to

interpret it, we must look to the intention of the parties as shown by the undisputed testimony. See *McIntosh* v. *Groomes*, 227 Mich. 215. To give the agreement any meaning, it can only be construed as a general limitation upon the liability of the individual partners. This was the intention of the partners. While it is true that a long time elapsed during which a large amount of goods was received on bills sent without orders properly countersigned, and the goods were not returned, there is no showing of any waiver of the terms of the agreement or that defendants paid any attention to the business or knew of the shipments of goods without countersigned orders. Plaintiff claims that there is still a balance of $1,569.94 due it. We shall not disturb the finding of the trial court that this amount must be further reduced by a credit of $111 for a machine returned to plaintiff. He further found that defendants were not bound by the orders not countersigned in accordance with the agreement and rendered judgment in favor of defendants.

It is affirmed, with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.